3 P.3d 1075

Mya JOHNSON, Mary Nolde Schraven and Kathleen Andersen, Plaintiffs–Appellants, Cross Appellees,

v.

A. Melvin McDONALD, Jr. and Jane Doe McDonald; Jones, Skelton & Hochuli, PLLC, Defendants–Appellees, Cross Appellants,

and

Bruce Frankie and Jane Doe Frankie, Defendants–Appellees.

No. 1 CA–CV 99–0178.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 9, 1999.

---

Treon, Strick, Lucia & Aguirre, P.A. by Richard T. Treon and Michael T. DePaoli, Phoenix, for Appellants, Cross Appellees.

Gallagher & Kennedy, P.A. by Don D. Skypeck, Phoenix, for Appellees, Cross Appellants.

Turley, Swan & Childers, P.C. by Christopher J. Bork, Michael J. Childers, Phoenix, for Appellees Frankie.

## OPINION

GERBER, Judge.

¶ 1 After appellants promoted an unsuccessful bill in the Arizona Legislature, they alleged that the appellees caused its defeat by defaming them. They sued for defamation, intentional infliction of emotional distress, and violation of constitutional rights. In dismissing the complaint, the trial court held appellees immune from the defamation claim and held further that the facts alleged did not support the emotional distress claim and also held that the claim under 42 U.S.C. section 1983 failed for lack of facts. We affirm the dismissal of the emotional distress claim, reverse and remand the dismissal of the defamation claim and remand the section 1983 claim for possible amendment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On appeal from granting a motion to dismiss, we take the facts alleged in the complaint to be true and view them in a light most favorable to the plaintiffs. *See Schabel v. Deer Valley Unified School Dist. No. 97*, 186 Ariz. 161, 162 n. 1, 920 P.2d 41, 42 n. 1 (App.1996). Whether a communication is privileged is a question of law for the court; we are not bound by the trial court's conclusions of law, which we review *de novo. See Blazek v. Maricopa County Superior Court*, 177 Ariz. 535, 537, 869 P.2d 509, 511 (App.1994); *Green Acres Trust v. London*, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984).

¶ 3 In a previous lawsuit, appellants Mya Johnson, Mary Nolde Schraven and Kathleen Anderson alleged that appellee Bruce Frankie sexually abused them when they were high school students. After they became adults,

they filed a civil suit against Frankie and the school district that employed him. The trial court dismissed the lawsuit for statute of limitations reasons.

¶ 4 Appellants then worked with some Arizona legislators to draft a new law to extend the statute of limitations for lawsuits filed by adults who had been sexually abused as minors. Under the proposed statute, extended time would apply to lawsuits filed against both the perpetrator of the sexual abuse and any individual or entity legally responsible for or covering up the abuse.

¶ 5 After the bill passed the Judiciary Committee of the Arizona House of Representatives by a unanimous vote and the entire House on a 50–4 vote, appellant Johnson met with members of the Arizona State Senate to urge its passage. The Senate Judiciary Committee voted 5–1 in its favor. The lone dissenting senator, John Kaites, prepared an amendment deleting the provision allowing the abused person to sue the entity, employer, or supervisor that assisted the perpetrator in the abuse.

¶ 6 Senator Kaites' amendment was defeated. Before the bill reached the Senate for final reading and vote, appellee A. Melvin McDonald, Jr., Frankie's attorney, allegedly advised some senators that Johnson had embezzled $250,000 from her father and then falsely accused him of child abuse. McDonald also supposedly informed senators that the trial judge had felt that the appellants were lying in their earlier lawsuit. Allegedly, because of these statements and pressure by Senators Kaites and Brenda Burns, President of the Senate, the bill did not come to a Senate vote.

¶ 7 Appellants then sued Frankie, McDonald and his law firm, Jones Skelton & Hochuli, for defamation, holding appellants up to a false light, intentional infliction of emotional distress, and deprivation of civil rights. In moving to dismiss the complaint, appellees argued that (1) McDonald's statements were absolutely privileged because made in connection with judicial proceedings, (2) the conduct alleged was not sufficiently outrageous to support a claim for intentional infliction of emotional distress, and (3) the

facts alleged did not show a conspiracy between appellees and state officials necessary to state a claim for violation of civil rights under 42 U.S.C. section 1983.

¶ 8 In granting the motion, the trial court ruled that *Green Acres Trust v. London,* 141 Ariz. 609, 688 P.2d 617 (1984), gave appellees absolute immunity from the defamation claim. The court also concluded that the acts complained of did not support a claim for intentional infliction of emotional distress and that the section 1983 claim failed the state action and protected interest tests.

¶ 9 Appellants appealed from dismissal of their complaint. Appellees cross-appealed from the order that the parties bear their own fees and costs.

## DISCUSSION

### A. Absolute Judicial Privilege

¶ 10 Appellants argue that appellees are not entitled to any immunity because under *Green Acres* the recipient of an extra-judicial communication must have some relationship to a proposed or pending judicial proceeding for the communication to be privileged. For their part, appellees respond that the test is whether the alleged defamatory communication bears "some relation" to a judicial proceeding. In their view, statements made to individuals who are not direct participants in a judicial proceeding may be privileged provided the statements have "some relationship" to the proceeding. Appellees assert that appellants' proposed legislation would have resurrected their previously dismissed lawsuit against Frankie and thus McDonald's communications with the legislators protected the litigious concerns of his clients.

¶ 11 *Green Acres* appears to announce the governing law. In that case, attorneys for class action plaintiffs in a lawsuit against Green Acres Trust and Green Acres Memorial Gardens, Inc., provided a copy to and discussed a drafted complaint with a newspaper reporter who then wrote an article unfa-

vorably characterizing Green Acres' marketing practices. Green Acres sued certain class action clients and their attorneys for defamation based on the communications made by the attorneys to the reporter. 141 Ariz. at 612, 688 P.2d at 620.

¶ 12 *Green Acres* considered whether the attorneys were covered by the absolute privilege given participants in judicial proceedings. The court explained that the privilege promotes "the fearless prosecution and defense of claims which lead to complete exposure of pertinent information for a tribunal's disposition" and protects judges, parties, lawyers, witnesses, and jurors. According to *Green Acres,* "to fall within the privilege, the defamatory publication must relate to, bear on or be connected with the proceeding." Further, "[t]he defamatory content of the communication need not be 'strictly relevant,' but need only have 'some reference to the subject matter of the proposed or pending litigation....'" *Id.* at 613, 688 P.2d at 621 (quoting Restatement (Second) of Torts § 586, comment c). The court agreed that "*'special emphasis must be laid on the requirement that it [the statement] be made in furtherance of the litigation and to promote the interest of justice.'"* *Id.* at 613–14, 688 P.2d at 621–22 (quoting *Bradley v. Hartford Accident & Indem. Co.,* 30 Cal.App.3d 818, 826, 106 Cal.Rptr. 718, 723 (1973) (emphasis in original)).[1]

¶ 13 *Green Acres* relied on *Asay v. Hallmark Cards, Inc.,* 594 F.2d 692 (8th Cir. 1979), which also involved statements to the press about a judicial proceeding. *Asay* endorsed this statement of public policy:

The salutary policy of allowing freedom of communication in judicial proceedings does not warrant or countenance the dissemination and distribution of defamatory accusations outside of the judicial proceeding. No public purpose is served by allowing a person to unqualifiedly make libelous or defamatory statements about another, but rather such person should be called upon

---

1. In *Silberg v. Anderson,* 50 Cal.3d 205, 266 Cal. Rptr. 638, 786 P.2d 365 (1990), the California Supreme Court disapproved the use of the "interest of justice" test that the *Bradley* court originated. The *Silberg* court reasoned that the test

undercut the privilege because it could be argued that all tortious publications must be excluded from the privilege as "tortious conduct is invariably inimical to the 'interest of justice.'" *Id.* at 373.

to prove the correctness of his allegations or respond in damages.

*Green Acres,* 141 Ariz. at 614, 688 P.2d at 622 (quoting *Asay,* 594 F.2d at 698). *Green Acres* concluded that "both content and manner of extra-judicial communications must bear 'some relation to the proceeding' " and that "[t]he requirements of *Asay* that the recipient of the extra-judicial communication have some relationship to the proposed or pending judicial proceeding for the occasion to be privileged is sound." *Id.* Thus, because the newspaper reporter had no relation to the litigation, no absolute privilege protected the attorneys' communications to her. *See id.* at 614–15, 688 P.2d at 622–23.

¶ 14 Here, legislators receiving the alleged defamatory statements had no relation to appellants' defunct lawsuit against Frankie and the school district. We fail to see how the legislative recipients of the alleged defamation had "some relationship" to the dismissed judicial proceeding merely because they were being asked to enact legislation that might have revived it. The lawsuit was not pending at the time the legislation was being considered. The legislators had no more relation to that lawsuit than a news reporter who conveys information helpful to a litigant, nor had they information usable in the litigation or personal connection to the facts and legal issues underlying it.

¶ 15 The cases cited by appellees to support their "some relationship" argument illustrate the close connections to the judicial proceedings required for the existence of the absolute privilege. In *Russell v. Clark,* 620 S.W.2d 865 (Tex.Civ.App.1981), where an attorney wrote to investors of the party adverse to his client, the court held the letter to be absolutely privileged because it was designed to obtain information for use as evidence in the pending litigation. The court noted that "[a]n attorney must seek discovery of evidence, interrogate potential witnesses, and often resort to ingenious methods to obtain evidence; thus, he must not be hobbled by the fear of reprisal by actions for defamation." *Id.* at 868.

¶ 16 In *Sriberg v. Raymond,* 370 Mass. 105, 345 N.E.2d 882 (1976), where an alleged defamatory statement appeared in a letter to a person against whom the attorney threatened suit and did, in fact, later sue, the potential defendant was found to have a close connection to the subsequent litigation. In *O'Neil v. Cunningham,* 118 Cal.App.3d 466, 173 Cal.Rptr. 422 (1981), the alleged defamatory statement appeared in a settlement letter written by the attorney for physician-defendants to the insurance company that hired him to defend the doctors. Similarly, in *Romero v. Prince,* 85 N.M. 474, 513 P.2d 717 (N.M.App.1973), an attorney of a judgment creditor of an estate wrote the alleged defamatory letter to the attorney for the administratrix in an attempt to reach a settlement.

¶ 17 In *Penny v. Sherman,* 101 N.M. 517, 684 P.2d 1182, 1186 (N.M.App.1984), where the attorney representing an estate and attempting to collect estate assets contacted the supervisor of a senior citizens center employee believed to have property of the decedent, the court found that the communication with the supervisor was privileged because the center was a resource for information and assistance in administering the estate.

¶ 18 In *Schwartz v. Bartle,* 49 Misc.2d 848, 268 N.Y.S.2d 715 (1966), where the creditors of debtor corporations in bankruptcy and the creditors' attorney wrote three letters charging the debtor with illegal withdrawals or illegal loans of funds, the creditors in the bankruptcy proceeding were found to have a sufficient connection to the proceeding. Finally, in *Froess v. Bulman,* 610 F.Supp. 332 (D.R.I.1984), *aff'd,* 767 F.2d 905 (1st Cir. 1985), where the attorney for the father in a child custody case wrote a letter critical of a clinical psychologist who prepared an evaluation of the child and sent the letter to the psychologist's supervisors, the court ruled that the letter was privileged because its statements were made to persons directly or indirectly responsible for a document usable as evidence in court.

¶ 19 In all of the examples cited by appellees, the recipients of the alleged defamatory communications were connected to a pending judicial proceeding by discovery or evidentiary matters, recovery of assets, set-

tlement negotiations, or as a potential party. These cases show that for the judicial privilege to apply, the recipient of the communications must have a direct interest in the litigation or possess evidentiary information directly relevant to it. In contrast, legislators considering a bill potentially affecting a possible future lawsuit, among other possible suits, lack a direct relationship to the future suit sufficient to warrant application of this absolute privilege.

¶ 20 Appellees further argue that statements made by McDonald to legislators caused defeat of a bill that would disadvantage his clients in litigation. In appellees' view, McDonald's legislative activity was a way of defending the interests of his clients. However, the fact that the communication was made with an intent to achieve an advantage in litigation is insufficient to trigger the privilege. *See Rothman v. Jackson,* 49 Cal. App.4th 1134, 1148, 57 Cal.Rptr.2d 284, 293 (1996). Appellees and their attorneys, of course, had the right to contact legislators to argue against the bill supported by appellants. But if they truly used defamatory statements to achieve their purpose, they may have to answer for them in a defamation action like any other citizen lacking the cloak of judicial privilege.

¶ 21 We conclude that the absolute judicial privilege does not apply to immunize appellees from appellants' defamation claim. Accordingly, we reverse the summary judgment on this claim.

## B. Intentional Infliction of Emotional Distress

¶ 22 The trial court also dismissed appellants' claim for intentional infliction of emotional distress because, in the court's view, appellees' behavior was not sufficiently outrageous. Appellants argue that appellees knew appellants were severely scarred emotionally from being sexually molested as teenagers but nevertheless published false information about them. They contend that appellees not only defamed these molestation victims but also intentionally orchestrated their character assassination.

■ ¶ 23 The elements of a cause of action for intentional infliction of emotional distress are:

*[F]irst* the conduct by the defendant must be "extreme" and "outrageous"; *second,* the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and *third,* severe emotional distress must indeed occur as a result of defendant's conduct.

*Ford v. Revlon, Inc.,* 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (citing Restatement (Second) of Torts § 46(1) (1965) (emphasis in original)). The trial court determines whether the acts at issue are sufficiently outrageous to state a claim for relief; however, if reasonable minds could differ about whether the conduct is sufficiently outrageous, the issue should be decided by a jury. *See Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.,* 183 Ariz. 550, 554, 905 P.2d 559, 563 (App.1995). To recover for this tort, the plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Exchange,* 10 Ariz.App. 560, 562, 460 P.2d 666, 668 (1969) (quoting Restatement (Second) of Torts § 46 cmt. d).

■ ¶ 24 Given these high standards, we agree with the trial court that the conduct at issue here is not so outrageous that it goes beyond all bounds of decency. Regardless of the truth of McDonald's alleged statements made about Johnson, the allegation that she had embezzled money from her father had previously appeared in a lawsuit filed by her father, and, in a counterclaim in that suit, Johnson had accused him of sexually molesting her. Thus, the content of McDonald's statements was already a matter of public record before McDonald's statements were made to legislators. McDonald's reiteration of these already public assertions to benefit his clients does not constitute outrageous and extreme conduct. *Cf. Benishek v. Cody,* 441 N.W.2d 399, 402 (Iowa App.1989) (accusing long-time employee of embezzlement and firing her was not extreme and outrageous

conduct); *Batson v. Shiflett,* 325 Md. 684, 602 A.2d 1191, 1217 (1992) (even though accusations of conspiracy, perjury and falsification of records in labor dispute were defamatory, they did not satisfy exacting standard for extreme and outrageous conduct); *Hanssen v. Our Redeemer Lutheran Church,* 938 S.W.2d 85, 94 (Tex.Civ.App.1996) (accusing employee of misappropriating church funds was not deemed extreme and outrageous conduct). Accordingly, the trial court did not err in dismissing the claim for intentional infliction of emotional distress.

### C. Civil Rights Claim

■ ¶ 25 Appellants also raised a claim against appellees under 42 U.S.C. section 1983. That section requires the violation of a constitutional right and a showing that a defendant acting under color of state law committed the deprivation. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). A private person acts "under color of" state law when involved in a conspiracy with state officials to deprive someone of federal rights. *See Tower v. Glover,* 467 U.S. 914, 920, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984).

■ ¶ 26 Appellants' claim alleged that the appellees, acting through McDonald, implemented a plan with Senator Kaites to defeat the bill and that McDonald then made the alleged defamatory statements discussed above to various senators to prevent the bill from coming to a final vote. The trial court dismissed the section 1983 claim because in its view the claim lacked specifically alleged facts or inferences to satisfy the state action and protected interest tests.[2] The court further stated that "[n]o possible amendment to the pleadings will cure the legal defect."

¶ 27 The trial judge's dismissal of this civil rights claim seemingly reflected his simultaneous conclusion that the appellees were immune from liability for their allegedly defamatory statements. The trial court concluded that the legal defect in the civil rights claim,

like the defect it found in the defamation claim, could not be cured. Since we have concluded, contrary to the trial court, that the appellees do not enjoy absolute immunity, appellants may be able to amend their civil rights claim by stating specific facts related to the defamation claim to support the alleged conspiracy, perhaps after further discovery. Given our holding precluding immunity, the trial court should allow appellants to amend their civil rights complaint to plead the necessary facts to support the claimed conspiracy.

### D. Claims Against Appellees Frankie

¶ 28 Appellees Frankie have argued on appeal that they cannot be held vicariously liable for the actions of McDonald if the claims against McDonald are dismissed. Appellants do not dispute this argument because the complaint alleges that McDonald was Frankie's agent and co-conspirator and, therefore, Frankie is liable to the same extent as McDonald. Since we remand the two claims above for further proceedings against McDonald, these claims as asserted against appellees Frankie also are remanded for further proceedings.

### E. Counterclaim of Appellees McDonald and Jones, Skelton & Hochuli, PLLC

■ ¶ 29 In their counterclaim, appellees argue that the trial court erroneously denied them their attorneys' fees and costs under Rule 11, Arizona Rules of Civil Procedure, and Arizona Revised Statutes Annotated ("A.R.S.") sections 12–341.01(C) (1992) and 12–349 for actions brought without substantial justification and for an improper purpose.

¶ 30 Given that we have reversed the dismissal of the defamation claim and allowed the section 1983 claim to continue, the entire action can hardly be deemed meritless at this point. As to their request for an award of costs in the trial court, the appellees are no longer prevailing except as to the dismissal

---

**2.** In stating a claim for conspiracy to violate one's constitutional rights under section 1983, appellants must state specific facts to support the existence of the alleged conspiracy. *See Burns v. County of King,* 883 F.2d 819, 821 (9th Cir.1989).

"Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir.1982).

of the claim for intentional infliction of emotional distress. In view of these rulings, this matter is likely to continue in the trial court. Accordingly, upon completion of the trial court action, the trial court may decide to award taxable costs and attorneys' fees to the prevailing party.

¶ 31 Appellants prevailed on the majority of their claims on appeal but did not ask for attorneys' fees on appeal. Contingent upon their compliance with Rule 21, Arizona Rules of Civil Appellate Procedure, we award them their costs on appeal under A.R.S. section 12–341.

CONCURRING: EDWARD C. VOSS, Presiding Judge, and JEFFERSON L. LANKFORD, Judge.