8 P.3d 418 (2000)
198 Ariz. 230
RECORP PARTNERS, INC., a Delaware corporation, and David Maniatis, Third-Party Plaintiffs-Appellants,
v.
GUST ROSENFELD, P.L.C., an Arizona corporation, and Timothy W. Barton and Jane Doe Barton, husband and wife, Third-Party Defendants-Appellees.
No. 1 CA-CV 99-0371.
Court of Appeals of Arizona, Division 1, Department D.
August 31, 2000.
*420 Piccoli, Lester & Hoover, L.L.P. by Russell Piccoli, Phoenix, Attorneys for Appellants.
Lewis and Roca, L.L.P. by Peter D. Baird and Patricia K. Norris, Phoenix, Attorneys for Appellees.
OPINION
PATTERSON, Judge.
¶ 1 Recorp Partners, Inc. (Recorp) and David Maniatis (Appellants) appeal the trial court's dismissal of their defamation claims against Gust Rosenfeld, P.L.C. (Gust Rosenfeld) and Timothy W. Barton and his wife (Appellees). For the following reasons we affirm in part, reverse in part, and remand.
FACTS AND PROCEDURAL HISTORY
¶ 2 In reviewing a motion to dismiss, we assume as true the facts alleged in the complaint and view the facts in the light most favorable to Appellants, the plaintiffs in the court below. See Johnson v. McDonald, 310 Ariz. Adv. Rep. 7, ¶ 2, 197 Ariz. 155, 3 P.3d 1075 (App.1999).
¶ 3 The Recorp-Williams Field & Gilbert Roads Associates Limited Partnership (the Partnership) was organized in 1986 to develop *421 and sell approximately 150 acres of real property in Maricopa County, Arizona. In 1993, several of the limited partners filed a derivative action against the Partnership's general partner, Recorp, and its sole officer and shareholder David Maniatis, alleging that Recorp and Maniatis diverted a Partnership opportunity in 1993 and that they had wrongfully reported and reimbursed expenses since the Partnership's inception in 1986. The limited partners also sought a court order to remove Recorp as the general partner and appoint a receiver, based on the alleged wrongdoings. Attorney Timothy Barton of Gust Rosenfeld represented two of the plaintiff limited partners in the lawsuit, Kim Eggleston and Lee Harris.
¶ 4 Appellants filed a counterclaim and third-party complaint against Eggleston, Harris, Gust Rosenfeld, and Barton, alleging that the derivative action was false and fraudulent and asserting RICO, defamation, and tortious interference claims against Barton and Gust Rosenfeld.[1] Specifically, Recorp and Maniatis alleged that Gust Rosenfeld had "generated at least three letters or memoranda making false allegations of wrongdoing" against Recorp and Maniatis, knowing that the allegations were false, for the purpose of convincing the limited partners "to voluntarily remove Recorp as the general partner of the Gilbert partnership." The alleged defamatory statements included statements that Maniatis had been accused of taking money from his deceased mother, that he had wrongfully taken funds from the Partnership, that he had engaged in criminal activities against the Partnership, and that he had taken money from other partnerships.
¶ 5 The complaint also alleged that Barton and Gust Rosenfeld made hundreds of telephone calls to limited partners throughout the United States repeating the statements set forth in the memoranda as well as additional allegedly defamatory statements.
¶ 6 Appellees moved for dismissal of the claims against them, contending that their statements were absolutely privileged under Restatement (Second) of Torts § 586 (1977) and the Arizona Supreme Court's decision in Green Acres Trust v. London, 141 Ariz. 609, 688 P.2d 617 (1984). The trial court ruled that the memoranda were absolutely privileged and dismissed the third-party complaint. Appellants timely appealed.
ISSUES
¶ 7 Appellants raise two issues on appeal:
1. Did the trial court err in concluding that the alleged defamatory statements were absolutely privileged?
2. Did the trial court err in dismissing the conspiracy to defame by telephone claim?[2]
DISCUSSION
A. Appellee's Motion to Dismiss
¶ 8 Appellees contend that the trial court should have treated the motion to dismiss on immunity grounds as one for summary judgment because it considered documents outside the pleadings. See Ariz. R. Civ. P. 12(b) ("If, on a motion ... to dismiss *422 for failure ... to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."). Our review of the record reveals that the few documents attached to the motion to dismiss, response, and reply do not require that the motion be treated as a motion for summary judgment under Rule 56, Arizona Rules of Civil Procedure.
¶ 9 First, two of the documents containing the alleged defamatory statements were attached to the response. The other two alleged defamatory documents were filed under seal for the trial court's in camera review. These four documents, however, are not "matters outside the pleadings" within the meaning of Rule 12(b); rather, they are the subject of the pleadings and were, in fact, described extensively in the third-party complaint. Thus, the trial court was free to consider them without converting the motion to a Rule 56 motion for summary judgment. See, e.g., Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir.1999) (when document is referred to in the complaint and is central to plaintiff's claim, the court's consideration of an authentic copy of a document submitted with a motion to dismiss under Fed.R.Civ.P. 12(b)(6) does not require court to convert 12(b)(6) motion to summary judgment motion under Rule 56, Federal Rules of Civil Procedure). Second, both parties submitted materials regarding related federal court litigation in connection with Gust Rosenfeld's alternative motion to dismiss on statute of limitations grounds. Nothing indicates that these materials were relevant to the motion to dismiss on immunity grounds, or that the trial court considered them in connection with that motion.
¶ 10 Finally, Gust Rosenfeld attached to its motion a list of court cases involving Appellants, to support its assertion that Appellants had filed a number of other allegedly retaliatory claims against attorneys representing its adversaries in other litigation. Aside from the material appearing to be irrelevant to the immunity motion, neither the minute entry nor the order makes any reference to it and nothing else in the record indicates that the trial court considered the list in its decision.
¶ 11 We therefore conclude that the trial court excluded and did not consider the extrinsic material presented. Therefore, the motion was properly treated as a motion to dismiss. But cf. Franzi v. Koedyker, 157 Ariz. 401, 407, 758 P.2d 1303, 1309 (App.1985) (where trial court actually considered extrinsic evidence, this court treated motion as one for summary judgment, even though the trial court never stated it was treating the Rule 12(b)(6) motion as one for summary judgment, and parties seemed unaware that the trial court should have done so).
B. Does the Absolute Privilege Apply?
¶ 12 Participants in judicial proceedings are protected by an "absolute privilege" to defame. See Green Acres, 141 Ariz. at 613, 688 P.2d at 621; Restatement (Second) of Torts § 586.[3] The privilege "protects judges, parties, lawyers, witnesses, and jurors," and the purpose of the privilege is to promote "`the fearless prosecution and defense of claims which lead to complete exposure of pertinent information for a tribunal's disposition.'" Johnson, 310 Ariz. Adv. Rep. at 8, ¶ 12, 197 Ariz. at 158, 3 P.3d at 1078 (quoting Green Acres, 141 Ariz. at 613, 688 P.2d at 621). "The defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense." Green Acres, 141 Ariz. at 613, 688 P.2d at 621.
¶ 13 Attorneys' extra-judicial statements may also fall within the privilege. See Johnson, 310 Ariz. Adv. Rep. at 8, ¶ 12-13, 197 Ariz. at 158, 3 P.3d at 1078. However, the privilege is not a "license to defame," Hawkins v. Harris, 141 N.J. 207, 661 A.2d 284, 292 (1995), but is subject to the requirement *423 that "the defamatory publication must relate to, bear on or be connected with the proceeding." Green Acres, 141 Ariz. at 613, 688 P.2d at 621. Also, the recipient of the extra-judicial communication must have "some relationship to the proposed or pending judicial proceeding for the occasion to be privileged." Johnson, 310 Ariz. Adv. Rep. at 8, ¶ 13, 197 Ariz. at 158, 3 P.3d at 1078 (quoting Green Acres, 141 Ariz. at 614, 688 P.2d at 622).
¶ 14 Appellees contend that an extra-judicial communication is required only to have "some connection" to the litigation, and is not required to be made "in furtherance of the litigation to be subject to absolute immunity. It has been previously recognized in Green Acres that "special emphasis must be laid on the requirement that [the statement] be made in furtherance of the litigation ...." Id. (quoting Bradley v. Hartford Acc. & Indem. Co., 30 Cal.App.3d 818, 106 Cal.Rptr. 718, 723 (1973) (emphasis in original)); see also Johnson, 310 Ariz. Adv. Rep. at 8, ¶ 12, 197 Ariz. at 158, 3 P.3d at 1078.
¶ 15 Because the "in furtherance of" language is the crux of our analysis, a preliminary discussion regarding the evolution of Bradley v. Hartford Acc. & Indem. Co., the case from which Green Acres and Johnson derived the "in furtherance of" language, is warranted. Bradley has come under much criticism in California and has essentially been overruled by the holding in Silberg v. Anderson, 50 Cal.3d 205, 266 Cal.Rptr. 638, 786 P.2d 365 (1990).
¶ 16 The Silberg court held that an attorney's statements regarding a psychologist's neutrality and independence were absolutely privileged. 266 Cal.Rptr. 638, 786 P.2d at 374. In doing so, the court examined the privilege and the various public policy considerations supporting immunity. See id. 266 Cal.Rptr. 638, 786 P.2d at 368-72. As set forth in Silberg, a communication is privileged when (1) it is made in judicial or quasi-judicial proceedings; (2) it is by litigants or other participants authorized by law; (3) it is to achieve the objects of the litigation; and (4) it has some connection or logical relation to the action. See Id. 266 Cal.Rptr. 638, 786 P.2d at 369. The court confronted the "in furtherance of" language in Bradley by explaining that:
The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e. that it not be extraneous to the action. A good example of an application of the principle is found in the cases holding that a statement made in a judicial proceeding is not privileged unless it has some reasonable relevancy to the subject matter of the action.
Id. 266 Cal.Rptr. 638, 786 P.2d at 374. Thus, rather than hold the two concepts as separate requirements for privilege, the court fused the "in furtherance of" aspect into the "logical relation to" requirement for the first time.
¶ 17 California's post-Silberg decisions reflect that "California courts have given the [litigation] privilege an expansive reach." Rubin v. Green, 4 Cal.4th 1187, 17 Cal. Rptr.2d 828, 847 P.2d 1044, 1047 (1993)(footnote citations omitted). In a case factually similar to the case now before us, an intermediate appellate court in California held that statements made in a letter sent by a litigant to his attorney and two court-appointed appraisers were absolutely privileged. See Passman v. Torkan, 34 Cal. App.4th 607, 40 Cal.Rptr.2d 291, 294 (1995). In finding the privilege applicable, the court relied heavily on Silberg and determined that because the statements had "some relation" to the lawsuit, the court would decline to "test the outer limits of `relevancy' to determine when a given communication may be deemed `extraneous to the action.'" Id. at 295-96.
¶ 18 In Sacramento Brewing Co. v. Desmond, Miller & Desmond, the court held that the erroneous identification of the plaintiff as a debtor in the caption of a notice of motion filed in an underlying bankruptcy proceeding was protected by the litigation privilege. 75 Cal.App.4th 1082, 89 Cal. Rptr.2d 760, 767 (1999). The court reasoned that while the misnamed party was not "logically related" to the litigation, the subject matter of the erroneous communication was *424 and thus the privilege was applicable. Id. The court stated that "[t]he communication furthered the objects of the litigation" and the fact that the document misnamed a debtor did not make the notice of motion "unconnected to, or palpably irrelevant to, the bankruptcy proceeding." Id. at 766. Finally, the court in Moore v. Conliffe, 7 Cal.4th 634, 29 Cal.Rptr.2d 152, 871 P.2d 204, 209 (1994), stated that "the purposes of the litigation privilege, as described in Silberg, strongly support application of the privilege to a witness who testifies in the course of a private, contractual arbitration proceeding."
¶ 19 Although we do not necessarily disagree with the outcome in these California cases, we decline to adopt their analysis that liberalizes the potential application of the privilege. We also do not find that the primary policies behind granting immunity would be served by allowing such a broad application. A test such as that adopted in California does not comport with the law in Arizona and thus we decline to follow the evolution of California's privilege. Instead, we find it conceptually acceptable and consistent with our public policy to consider the "related to" and "in furtherance of" concepts separately.
¶ 20 On the other hand, we reject Appellants' contention that, to be "in furtherance of" litigation, a statement must be directed to a court, filed in a judicial proceeding, or constitute a demand letter or a request for information or evidence. Rather, we conclude that statements made for the purpose of apprising a party of the basis or status of the lawsuit are statements made "in furtherance of" litigation.
¶ 21 In summary, to benefit from the absolute judicial immunity doctrine, an attorney's extra-judicial statement must be both related to litigation and made in furtherance of the litigation, and the recipient of the communication must have some relationship to the proceeding.
¶ 22 Here, the alleged defamatory statements were published to the limited partners in the Partnership. Appellants do not contest that the Partnership members had "some relationship" to the lawsuit. The parties dispute only whether the statements were related to and made in furtherance of the litigation.
¶ 23 There are four allegedly defamatory documents at issue; we will discuss each in turn to determine whether any one or more of these meets the requirements.
1. October 10, 1997, Letter From Barton to Eggleston and Harris.
¶ 24 The first document at issue is a letter dated October 10, 1997, addressed to Eggleston and Harris from Barton. In the letter, Barton describes the actions taken to date in the lawsuit and provides his opinions regarding the viability of the cause of action as well as certain statements made by Maniatis and his attorney. The statements in the letter all relate to the pending litigation. These statements were made "in furtherance of" the litigation if we assume that Barton prepared this letter with the intent or knowledge that Eggleston and Harris would distribute it to the other limited partners who were persons related to the lawsuit. The trial court correctly concluded that the statements in this letter were privileged and did not err in dismissing Appellants' claims based on this letter.
2. October 24, 1997, Letter From Barton to Eggleston and Harris.
¶ 25 The second document at issue is a letter dated October 24, 1997, again addressed to Eggleston and Harris from Barton. In the letter, Barton describes actions taken in the lawsuit since the last letter and responds to Eggleston and Harris's request for comments regarding a letter from Maniatis to the limited partners. This letter refers to Maniatis' letter that attempted to refute allegations made in the lawsuit. The letter explains why Barton believed Maniatis would ultimately be unsuccessful in refuting the claims. As with the first letter, these statements all relate to the pending litigation. The statements were made "in furtherance of" the litigation and were privileged even if we assume that Barton prepared this letter intending or knowing that Eggleston and Harris would distribute it to the other limited partners. Thus, the trial court correctly *425 dismissed Appellants' claims based on this letter.
3. Document Entitled "Why Do We Need A New General Partner?"
¶ 26 In May, 1998, Eggleston and Harris distributed by mail and/or telephone, a memorandum prepared by Barton entitled "Why Do We Need a New General Partner?" to all of the limited partners in the Partnership. The memo explained that the hearing to have Recorp removed as general partner was delayed and requested that the limited partners act to remove Recorp pursuant to the partnership's official procedures. The memo then listed a number of reasons for this request, which Appellants contend are defamatory. Regardless of whether each statement, taken individually, might "bear some relation" to the pending litigation, the statements, as distributed in the memo, were not made "in furtherance of" the litigation. Rather, as the title suggested, they were made for the express purpose of encouraging the limited partners to take action outside the lawsuit. Therefore, the statements were not subject to the absolute privilege, and the trial court erred in dismissing the proceedings as to this document.
4. "Summary" Memorandum From Eggleston and Harris to Limited Partners.
¶ 27 Also in May, 1998, Eggleston and Harris distributed, again by telephone and/or mail, a "summary" prepared by Barton, to all of the limited partners in the Partnership. The summary discussed in some detail the status of a pending sale of the Partnership's real property, including the potential effect of the lis pendens that had been filed. It provided Eggleston and Harris's opinion regarding whether to release the lis pendens, as Maniatis had requested. The document also briefly updated the limited partners as to the status of the litigation and Gust Rosenfeld's agreement to accept a contingent fee. All of these statements clearly are "related to" the litigation. We also conclude that the statements are "in furtherance of" the litigation in that they explain reasons why the lis pendens should not be released. The trial court correctly concluded that these statements were privileged and we uphold the dismissal of any of Appellants' claims based on this portion of the memo.
¶ 28 However, the memo also includes a section entitled "Immediate Partner Action to Remove Recorp." As with the previous memo encouraging action outside the lawsuit, the statements in this section of the memo were not made "in furtherance of" the litigation, and therefore were not privileged. The trial court erred in dismissing Appellants' claims based on this portion of the memo.
C. Did the trial court err in dismissing the conspiracy to defame by telephone claim?
¶ 29 Assuming both that a claim for conspiracy to defame is actionable in Arizona,[4] and that Appellants' complaint adequately stated such a claim, we nevertheless conclude that Appellants have waived any right to assert this claim.
¶ 30 Appellees filed a motion to dismiss the third-party complaint, alleging several grounds for dismissal. However, the motion discussed only claims related to the alleged defamatory letters and memoranda and did not discuss any claims based on telephone calls. In response to the motion, Appellants likewise discussed only the alleged defamatory letters and memoranda, and did not contend that the complaint asserted any claims against Appellees other than those based on the written communications. Moreover, although the complaint itself can be read to allege that Appellees were involved in the alleged defamatory telephone calls, it does not do so in a clear and unambiguous manner. In fact, the natural conclusion from reading the complaint is that only the other third-party defendants were involved in the defamatory telephone calls. Thus, absent *426 some argument or statement to the trial court that the complaint was intended to bring such a claim, it is understandable that neither the court nor Appellees recognized that such a claim was being pleaded.
¶ 31 While these facts alone might be insufficient to support a claim of waiver, additional facts demonstrate that Appellants have waived their right to assert a claim of conspiracy to defame by telephone. More specifically, after the trial court issued its minute entry granting the motion to dismiss, Appellees submitted a form of order stating that the trial court was "[d]ismissing the third party complaint and all claims asserted by third party plaintiffs against Gust Rosenfeld and the Bartons." (Emphasis added). Appellants filed an objection to the form of order in which they alleged, without any explanation, that the summary judgment was "not necessarily dispositive of all claims against Gust Rosenfeld and the Bartons." Appellants did not state what other claims might exist, and the trial court apparently concluded that none did exist, because it denied the objection and entered the original proposed order. Nor did Appellants file a motion for reconsideration or otherwise object to the dismissal of the alleged claim for conspiracy to defame by telephone.
¶ 32 In short, Appellants never asserted, until this appeal, that the complaint was intended to state a cause of action against Appellees for conspiracy to defame by telephone. They never argued to the trial court that such a cause of action existed and should not be dismissed. Their unexplained statement that the judgment was "not necessarily dispositive of all claims" was too general, in light of the vagueness of the complaint, to adequately preserve the specific claim they now seek to assert. "It is well established that issues not presented below should not be considered on appeal." Cohn v. Industrial Comm'n of Arizona, 178 Ariz. 395, 398, 874 P.2d 315, 318 (1994). We therefore decline to consider whether the trial court erred in dismissing the alleged cause of action for conspiracy to defame by telephone.
CONCLUSION
¶ 33 For the foregoing reasons, we affirm the trial court's dismissal of the claims against Appellees based on the October 10, 1997, and October 24, 1997 letters. We reverse the trial court's dismissal of the claims based on the document entitled "Why Do We Need A New General Partner?". We affirm the trial court's dismissal of the claims against Appellees based on the portions of the May, 1998, summary memorandum that we have concluded were related to and in furtherance of the litigation, but reverse the trial court's dismissal of the claims based on the remaining portions of the memorandum. We affirm the trial court's dismissal of any and all other claims allegedly contained in the third-party complaint against Appellees. This case is remanded to the trial court for proceedings consistent with this decision.
CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and SHELDON H. WEISBERG, Judge.
NOTES
[1] Eggleston and Harris eventually were dismissed from this action in the trial court and are not parties to this appeal.
[2] The parties dispute a third issue, which we find to be a non-issue: whether the trial court erred in dismissing, as premature, any claim based upon the theory of malicious prosecution. Appellees contend that all of Appellants' allegations were "nothing more than unstated malicious prosecution claims," and appear to contend that the trial court properly dismissed the entire third-party complaint. Defamation and malicious prosecution are distinct causes of action, however, and Appellees' brief does not explain or develop their contention that Appellants' third-party complaint did not adequately state a claim for the former. We therefore reject Appellees' implied argument on appeal that Appellants failed to state a claim for defamation and that we should uphold the trial court's dismissal of the entire complaint against Appellees based on the trial court's conclusion that a malicious prosecution claim would be premature. See Schabel v. Deer Valley Unified Sch. Dist. No. 97, 186 Ariz. 161, 167, 920 P.2d 41, 47 (App.1996) (issues not clearly raised and argued in party's appellate brief are waived).

Appellants, however, deny that they ever asserted a claim for malicious prosecution. Because Appellants do not seek to pursue such a claim, we need not consider whether the trial court properly dismissed it, or whether it even existed.
[3] Restatement (Second) of Torts § 586 provides: An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.
[4] Compare Perry v. Apache Junction Elementary Sch. Dist. # 43, 20 Ariz.App. 561, 564, 514 P.2d 514, 517 (1973)(stating that Arizona has allowed actions for conspiracy to defame), with Hirsch v. Cooper, 153 Ariz. 454, 461, 737 P.2d 1092, 1099 (App.1986) (stating, without discussion, that conspiracy to defame "is not recognized as a tort under Arizona law").