714 P.2d 824

**Judy BAIN, Petitioner,**

v.

**The SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA; the Honorable John Foreman, a judge thereof, and Robert D. MILLS, M.D., real party in interest, Respondents.**

**No. 18353-SA.**

Supreme Court of Arizona,
En Banc.

Feb. 6, 1986.

Jack Levine, Phoenix, for petitioner.

Teilborg, Sanders & Parks by Neil C. Alden and Steven Plitt, Phoenix, for respondents.

HAYS, Justice.

Petitioner, Judy Bain, brings this special action challenging an order of the trial court requiring her to produce records of her treatment by a psychologist in 1980, despite her claim of privilege under A.R.S. § 32–2085. Petitioner claims that the status of the psychologist-patient privilege is the same as that of the physician-patient and attorney-client privilege concerning the issue of waiver. Therefore, petitioner maintains that the trial court exceeded its legal authority by ordering that the records be produced. We agree. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5, and Rule 1, Arizona Rules of Procedure for Special Actions, 17A A.R.S. The facts follow.

In 1980, petitioner sought counseling from Dr. Lanyon, a clinical psychologist, in connection with marital difficulties she and her husband were experiencing. The counseling lasted approximately four sessions before petitioner discontinued it because of the cost involved. The counseling included written psychological testing.

On March 11, 1982, petitioner fell from a ladder and sustained an injury to her lower back. She was treated by various physicians and was eventually referred to the Southwest Regional Back Program at Good Samaritan Medical Center ("Center") for an evaluation. While at the Center, petitioner underwent a battery of psychological tests. This testing resulted in a diagnosis of conversion reaction (emotional stress being converted into physical symptomatology, *i.e.*, pain).

Eventually, petitioner came under the care of respondent, Dr. Mills. Based upon his own examination and diagnostic testing, Dr. Mills performed surgery on petitioner's

back. However, there was no improvement in her condition. During the course of his treatment, Dr. Mills failed to seek either Dr. Lanyon's or the Center's records of petitioner's previous psychological testing. Subsequently, petitioner underwent a second operation by another physician who, during the operation, caused neurological injuries which left petitioner with a permanent disability.

Petitioner and her husband sued Dr. Mills, claiming that he had performed unnecessary surgery and that he had negligently failed to discover that petitioner's symptoms were attributable to psychological factors that could not be relieved by surgery. In her complaint, petitioner claimed that as a result of his negligence she has "suffered severe ... anxiety, and a loss of the complete satisfaction of living a life otherwise normal to her." Petitioner's husband further claimed that he had been "deprived of the society, companionship and consortium of his wife."

In the course of discovery, petitioner testified at her deposition that in 1980 she had received counseling from Dr. Lanyon in connection with marital difficulties. Subsequently, Dr. Mills moved for disclosure of the records concerning these sessions. Petitioner objected to the motion based on the psychologist-patient privilege contained in A.R.S. § 32–2085. Specifically, petitioner claimed that during her sessions with Dr. Lanyon, she revealed items of a personal and/or private nature which, if revealed, would be highly embarrassing to petitioner and subject her to shame, humiliation and ridicule.

Following a hearing on the issue, the trial court ordered petitioner to produce Dr. Lanyon's records. In response, petitioner filed the instant special action.

■ In 1965, Arizona statutorily recognized that communications between a patient and a registered clinical psychologist were privileged. *See* A.R.S. § 32–2085; UDALL & LIVERMORE, ARIZONA LAW OF EVIDENCE, § 76(A)(4). By its provisions, § 32–2085 specifically mandates that the psychologist-patient privilege be "placed on the same basis as [that] provided by law between attorney and client." These privileges, once they attach, prohibit not only testimonial disclosures in court but also pretrial discovery of information within the scope of the privilege. Rule 26(b)(1), Rules of Civil Procedure, 17A A.R.S. However, privileges as to confidential communications may be waived and the privileged information thereafter is no longer protected. *Martinez v. Fenton,* 117 Ariz. 292, 293, 572 P.2d 120, 121 (App. 1977), *vacated on other grounds,* 118 Ariz. 119, 575 P.2d 318 (1978); UDALL & LIVERMORE, ARIZONA LAW OF EVIDENCE, § 71.

The Arizona statutes relating to the psychologist-patient privilege and the attorney-client privilege are unique by containing express provisions specifying the conduct which will be deemed a waiver of the privilege. In the case of the psychologist-patient privilege, the conduct constituting a waiver must be "in writing or in court testimony." A.R.S. § 32–2085. In the case of the attorney-client privilege, the conduct constituting consent to disclosure and thereby waiver of the privilege is defined as "offer[ing] himself as a witness and voluntarily testif[ying] with reference to the [privileged] communications." A.R.S. § 12–2236; *Tripp v. Chubb,* 69 Ariz. 31, 35, 208 P.2d 312, 314 (1949). The waiver provision of § 12–2236 applies equally to the attorney-client privilege and the doctor-patient privilege. *See Patania v. Silverstone,* 3 Ariz.App. 424, 428, 415 P.2d 139, 143 (1966). With these rules in mind, a brief review of the case law pertaining to these privileges will be helpful in understanding our resolution of the issue before us.

Until 1963, the prevailing authority was that, since the manner of waiving the physician-patient privilege was statutorily prescribed, courts were not free to imply consent, and therefore waiver, from the mere fact that the privilege holder placed a particular medical condition at issue in a civil trial. *Arizona & New Mexico Ry. v. Clark,* 235 U.S. 669, 35 S.Ct. 210, 59 L.Ed.

415 (1915). However, in the 1963 case of *Throop v. F.E. Young & Co.*, 94 Ariz. 146, 382 P.2d 560 (1963), this court held that where a defendant had asserted a defense of sudden heart attack, he would not be permitted to assert the physician-patient privilege to bar disclosure of his previous treatment for heart problems.

Further, it is readily apparent that defendant's claim of "sudden heart attack" on the issue of negligence was highly material and not in accord with the actual facts. The claim of privilege to buttress such a position is contrary to the spirit of the privilege and the purpose of trials to ascertain the truth.

94 Ariz. at 157–58, 382 P.2d at 567–68. Moreover, the court stated:

"A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege. It is not to be both a sword and a shield * * *."

94 Ariz. at 158, 382 P.2d at 568 (quoting 8 WIGMORE ON EVIDENCE 855, § 2388 (McNaughton Rev.1961)).

■ Over 20 years have passed since *Throop* adhered to the common law principle of implied waiver. During this period, no legislative action has been taken to negate the effects of this holding. Thus, the law of Arizona relating to waiver of the physician-patient privilege is two-fold: where a privilege holder (1) offers himself as a witness and voluntarily testifies with reference to privileged communications concerning the condition, § 12–2236; or (2) places a particular medical condition at issue by means of a claim or affirmative defense, *Throop, supra*, then the privilege will be deemed waived with respect to that particular medical condition.

■ We believe the same rule should be applied to the psychologist-patient privilege. Since § 32–2085 specifically requires that the psychologist-patient privilege be placed on the same basis as that between attorney and client, and the waiver provision of § 12–2236 applies equally to the attorney-client privilege and the physician-patient privilege, the common law rule of *Throop* should logically also be applied in those cases involving the psychologist-patient privilege.[1] Thus, we hold that where a client waives the psychologist-patient privilege in writing or or in court testimony, pursuant to § 32–2085, or pursues a course of conduct inconsistent with observance of the privilege, he has consented to disclosure of the information and has thereby waived the psychologist-patient privilege as to the confidential communication.

Having determined what behavior constitutes a waiver of the psychologist-patient privilege, we now turn to the facts before us. During her deposition, petitioner testified that she had received counseling from Dr. Lanyon on approximately four different occasions in 1980. Petitioner further testified as follows:

Q. Did this doctor prescribe any medication for you?

A. No.

Q. Did she administer any written testing to you?

A. Yes.

Q. What did she tell you about your condition?

A. Oh, it didn't have nothing to do with this condition that I'm in.

Q. Did she tell you that she thought you had a problem that she could not help you with?

---

1. At this point we note that the purposes behind the physician-patient privilege and the psychologist-patient privilege are identical—to enhance the effective diagnoses and treatment of illness by insuring that a person requiring professional attention will not be deterred by fear that his physical or mental condition may become public, thereby subjecting him to embarrassment or humiliation. *Clark v. District Court, Second Jud. Dist.*, 668 P.2d 3, 8 (Colo.1983). Thus, the logical extension of the *Throop* rule to the psychologist-patient privilege should not thwart any public policy or intent behind the statute.

A. No. It was just someone to talk to.

Q. And why did you quit going to see her?

A. It was getting too expensive.

\*     \*     \*     \*     \*     \*

Q. (By Mr. Guyer): For what reason did you see her?

A. We was having marital problem.

By testifying to the existence of these counseling sessions, petitioner's deposition testimony was sufficient to establish the privileged character of the records pertaining to her prior treatment. *See, e.g., Clark v. District Court, Second Jud. Dist.*, 668 P.2d at 9. Thus, before petitioner could have been compelled to produce Dr. Lanyon's records, it must have been demonstrated that she either expressly or impliedly waived the privilege.

Dr. Mills argues that petitioner, by claiming that her symptoms were the result of a "conversion reaction," has placed her psychological condition at issue. Similarly, Dr. Mills argues that since petitioner's husband has claimed damages for loss of his wife's companionship and consortium, he has placed at issue the normal relationship enjoyed by the couple prior to the injury. Thus, Dr. Mills claims that petitioner has waived her psychologist-patient privilege against disclosure of the records. We do not agree.

■ First, as to the "conversion reaction" claim, we do not believe that petitioner has impliedly waived the privilege with respect to her treatment by Dr. Lanyon in 1980. The scope of an implied waiver of a statutory privilege only extends to privileged communications concerning the specific condition which has been voluntarily placed at issue by the privilege holder. *See Throop v. F.E. Young & Co.*, 94 Ariz. at 157, 382 P.2d at 567. Here, petitioner has voluntarily placed the medical condition "conversion reaction" in issue by alleging Dr. Mills's negligence in failing to discover it. That condition, however, is the only one

she has placed at issue. Therefore, petitioner would not have waived the psychologist-patient privilege with respect to treatment for other conditions. In other words, the act of placing "conversion reaction" in issue did not imply a waiver with respect to petitioner's 1980 counseling, since that counseling dealt with marital problems and not with a psychological or medical condition. Thus, under *Throop*, petitioner has waived the psychologist-patient privilege only with respect to the psychological testing at the Center, which followed her accident.

■ Moreover, we do not believe that petitioner waived her statutory privilege of nondisclosure by her deposition testimony. During her deposition, petitioner merely testified as to the identity of the clinical psychologist and the subject matter of the counseling sessions, *i.e.*, marital difficulties. She did not relate any confidential matters she discussed with Dr. Lanyon nor any advice or therapy she had received at their sessions. We believe that such prefatory information is insufficient to constitute an express waiver of petitioner's confidential privilege. *Compare Patania v. Silverstone, supra* (plaintiff waived the physician-patient privilege by testifying at deposition as to the *substance* of communications with his physician concerning the loss of fingertip sensation and the possibility of it returning).

■ Second, we find no merit in Dr. Mills's argument that, by claiming a loss of consortium, the petitioner and her husband had impliedly waived the privilege as to any psychological treatment related to the couple's marital difficulties. In general, the claim for loss of consortium is personal to the spouse of the injured person. 41 Am.Jur.2d *Husband and Wife* § 460. In the instant case, the spouse of the injured person, petitioner's husband, is not the holder of the privilege. Rather, the privilege belongs to petitioner and only she has the right to waive it as to any confidential

communications with her psychologist. *Tucson Medical Center Inc. v. Rowles,* 21 Ariz.App. 424, 429, 520 P.2d 518, 523 (1974). Accordingly, by placing in issue the quality of the marital relationship, via a claim for loss of consortium, petitioner's husband was powerless to effect a waiver of his wife's psychologist-patient privilege.

As the trial court's order is not in accord with prior Arizona case law, petitioner's prayer for relief is granted. The stay entered by the Superior Court is hereby vacated and the case remanded for further proceedings.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.