IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

J.F.,
*Petitioner*,

v.

THE HONORABLE GREG COMO, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge*,

C.F.,
*Real Party in Interest*.

No. 1 CA-SA 21-0123
FILED 7-12-2022

Petition for Special Action from the Superior Court in Maricopa County
No. FC2020-007173
The Honorable Gregory Como, Judge

**JURISDICTION ACCEPTED,
RELIEF GRANTED IN PART, DENIED IN PART**

COUNSEL

The Cavanagh Law Firm, PA, Phoenix
By Helen R. Davis, Nicholas J. Brown
*Counsel for Petitioner*

krdlaw, PC, Scottsdale
By Kiilu Davis
*Counsel for Real Party in Interest*

## OPINION

Judge David D. Weinzweig delivered the opinion of the Court, in which Judge Paul J. McMurdie joined. Presiding Judge Peter B. Swann dissented.

W E I N Z W E I G, Judge:

¶1 We must determine when the superior court may order a parent to release mental health records for in-camera review in a child custody dispute. The superior court ordered Father to release five years of his mental health records for in-camera review from providers who treated him for alcohol abuse. Father petitioned for special action review, arguing he cannot be ordered to produce those records under the psychologist-patient privilege, which he never waived. We grant relief in part and deny in part, holding that Father impliedly waived the psychologist-patient privilege on the discrete topic of his alcohol abuse but remand for the court to reduce the responsive period of records from five years to one year. We do not prematurely reach the issue of what sanctions would be proper if Father chooses not to comply with the order, including whether an adverse inference would be appropriate.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Mother and Father were married for seven years and have three minor children. Mother filed for divorce in December 2020. Both parents sought legal decision-making and parenting time.

¶3 Father moved for a temporary order that he receive unsupervised parenting time. Mother objected, arguing that unsupervised parenting time would jeopardize the children's safety. She accused Father of being "an alcoholic" who "disappear[ed] for days at a time while on drinking binges," and expressed "serious concerns" about "the children being in a vehicle with Father due to his history of driving while intoxicated." She alleged that Father had once tried to pick up their daughter from school while intoxicated. Given this "ongoing struggle with alcoholism," Mother insisted that Father have only supervised parenting time, at least until the court "determine[s] whether he will be able to provide a safe environment for the children."

¶4 Father conceded he was diagnosed with "moderate to severe" alcohol use disorder and agreed "he should not drink alcoholic beverages."

He admitted to four DUI charges before the marriage. Still, Father argued he "rebutted" any adverse presumption arising from his recent alcohol abuse under Arizona law because his disorder was "in early remission," he had tested sober for nearly four months, and he continued to pursue "a wide-range of self-care opportunities," including support groups and "counseling with Nancy Harris, Psy.D." Indeed, Father insisted that Mother's concerns were not "rational" because he had "respon[ded] to [her] concerns with honest acknowledgment and willingness to provide objective measures of sobriety."

¶5 Around this time, Mother asked Father to sign a release for his counseling and outpatient alcohol rehabilitation records. Father refused. He argued the records were privileged under state and federal law. The superior court encouraged the parties to resolve the issue themselves.

¶6 The court held an evidentiary hearing on Father's request for unsupervised parenting time in March 2021. Both parents testified under oath, but we do not know what they said because Father never provided this court with a transcript of the hearing.

¶7 After the hearing, the superior court issued temporary orders, granting the parents joint legal decision-making and designating Mother as the primary residential parent. The court also ordered Father to receive unsupervised parenting time, but only on the condition he continue to participate in extensive daily and monthly alcohol testing, install an Intoxalock device on his vehicle, attend Alcoholics Anonymous, and continue therapy with his therapist or another counselor specializing in addiction.

¶8 About two months later, Father petitioned the superior court to modify the temporary orders, asking the court to grant him equal parenting time and relax his alcohol-testing burden. Father again stressed his continued participation in "alcohol monitoring and treatment." He later argued this relief was appropriate because he had "admitted the issue," "taken multiple steps to address the disorder," and had "another four months of provable sobriety under his belt."

¶9 Meanwhile, Father refused to release the counseling records of providers who treated him for alcohol use disorder. He rejected Mother's offer to hire a neutral third-party to review the records under seal and report on "whether Father[] was appropriately treating his addiction

through therapy." And so, Mother asked the court to hear and decide the issue.

¶10        The superior court heard evidence and argument on Father's request to modify the temporary orders and Mother's request for Father's counseling records. Both parents testified under oath, but again, Father did not provide us with the transcript. After the hearing, the superior court issued a minute entry granting Father's motion to modify the temporary orders.

¶11        At the same time, the court ordered Father to release his medical records from providers who had "seen or treated [him] for alcohol abuse" since December 2015. The court ordered it would first review the documents in camera to ensure the records were limited to the issue of his alcohol abuse. This special action followed. We exercise jurisdiction. *Blazek v. Superior Court*, 177 Ariz. 535, 536 (App. 1994) ("[A] special action is the appropriate means of relief when a party is ordered to disclose what []he believes is privileged material.").

## DISCUSSION

¶12        Father argues the superior court should not have required him to release the records because they were protected under the psychologist-patient privilege, A.R.S. § 32-2085(A), and he never waived the privilege.[1]

¶13        We review de novo the waiver of an evidentiary privilege, which "poses a mixed question of law and fact." *See Empire W. Title Agency, LLC v. Talamante ex rel. County of Maricopa*, 234 Ariz. 497, 498-99, ¶ 8 (2014). We also review de novo issues of statutory interpretation. *State ex rel. DES v. Pandola*, 243 Ariz. 418, 419, ¶ 6 (2018).

I.        **Arizona Child Custody Laws and the Doctrine of *Parens Patriae***

¶14        The dispositive factor in all child custody disputes is the child's best interest, and Arizona courts must safeguard that interest. *See Hays v. Gama*, 205 Ariz. 99, 102, ¶ 18 (2003) (child's best interests

---

[1]        Father briefly contends that "[f]ederal law also protects rehabilitation records from disclosure," citing 42 U.S.C. § 290dd-2(a), but he never develops the argument in his briefing and thus waives it here. *See Polanco v. Indus. Comm'n of Arizona*, 214 Ariz. 489, 491, ¶ 6 n.2 (App. 2007) (failure to develop argument in petition for special action constitutes waiver).

"paramount" in custody determinations). This duty is rooted in Arizona statutes and the common law.

¶15     Arizona law has a full chapter of statutes devoted to child custody issues that invariably direct the superior court to protect a child's best interests. *See, e.g.*, A.R.S. § 25-403(A) (legal decision-making and parenting time); A.R.S. § 25-403.01(B) ("level of decision-making"); A.R.S. § 25-403.02 (parenting plans); A.R.S. § 25-404 (temporary orders); A.R.S. § 25-407(C) (costs and expenses); A.R.S. § 25-407(D) ("public hearing"); A.R.S. § 25-408(G) (relocation); A.R.S. § 25-411 (modification); A.R.S. § 25-410(B) (judicial supervision); A.R.S. § 25-414(A) (visitation or parenting time violations); A.R.S. § 25-415(B)(3) (sanctions).

¶16     To that end, the courts "must strive to marshal, inspect and analyze the relevant and admissible evidence needed for it to reach a well-informed decision in the child's best interests." *See Kelly v. Kelly*, 252 Ariz. 371, 375, ¶ 18 (App. 2021).

¶17     As relevant here, Section 25-403 requires that courts determine questions of legal decision-making and parenting time "in accordance with the best interests of the child," accounting for "all factors that are relevant to the child's physical and emotional well-being." A.R.S. § 25-403(A). One factor is "[t]he mental and physical health of all individuals involved." A.R.S. § 25-403(A)(5). The legislature also recognized an adverse presumption against parents who have abused drugs or alcohol "within twelve months before the petition." *See* A.R.S. § 25-403.04(A). In those cases, Arizona law creates a "rebuttable presumption that sole or joint legal decision-making . . . is not in the child's best interests." *Id*.

¶18     Beyond these statutes, however, Arizona courts have long assumed the "power and duty . . . to act for the child's best interests" under the common law doctrine of *parens patriae*. *See Stewart v. Superior Court*, 163 Ariz. 227, 228 (App. 1989) (describing the "*parens patriae* concern" as when "a child's parents, by conflict of interest or for other reasons, may be unable or unwilling to perceive or advance the child's best interest"); *see also Kinsella v. Kinsella*, 696 A.2d 556, 577-78 (N.J. 1997) (describing this role as "an expression of the court's special responsibility to safeguard the interests of the child at the center of a custody dispute because the child cannot be presumed to be protected by the adversarial process"). This unique role of our courts predates even statehood. *See Bell v. Bell*, 44 Ariz. 520, 528 (1934) (the doctrine of *parens patriae* "dates from a very early period in the history of these courts," originating with "the king of England").

¶19 Against this backdrop, a child's best interest represents the lens through which Arizona courts must review and decide all custody disputes.

## II.    The Psychologist-Patient Privilege and Waiver

¶20 Father asserts the psychologist-patient privilege under Section 32-2085(A), which prevents a licensed psychologist from "voluntarily or involuntarily divulg[ing] information that is received by reason of the confidential nature of the psychologist's practice." *See* A.R.S. § 32-2085(A). This privilege recognizes that "confidential relations and communication[s] between a client or patient and a psychologist . . . are placed on the same basis as those provided by law between an attorney and client." *Id.* The legislature adopted this privilege to facilitate mental health treatment, recognizing a safe space where patients are frank about their thoughts and emotions without fear of public consequence. *Bain v. Superior Court*, 148 Ariz. 331, 334 n.1 (1986).

¶21 Two more points on the privilege: First, Arizona courts have construed it narrowly because it "exclude[s] relevant evidence and impede[s] the fact-finder's search for the truth." *Blazek v. Superior Court*, 177 Ariz. at 537.

¶22 Second, the privilege is not absolute. Arizona courts have recognized two forms of waiver. Section 32-2085 instructs that a patient may "waive[] the psychologist-client privilege in writing or *in court testimony.*" *See* A.R.S. § 32-2085(A) (emphasis added). And a patient may impliedly waive the psychologist-patient privilege by "pursu[ing] a course of conduct inconsistent with observance of the privilege." *See Bain*, 148 Ariz. at 334. For instance, the privilege is "deemed waived with respect to [a] particular medical condition" when a client or patient "places [that] particular medical condition at issue by means of a claim or affirmative defense." *Id.*

¶23 Any implied waiver, however, is limited to the "privileged communications concerning the specific condition which has been voluntarily placed at issue by the privilege holder." *Id.* at 335.

¶24 Even then, the superior court must first inspect the records in camera, ensuring that only the relevant and necessary documents are produced. *See Blazek*, 177 Ariz. at 542. According to the United States Supreme Court, a lesser evidentiary showing is needed to trigger an in-camera inspection because it represents "a smaller intrusion" on privacy interests. *See United States v. Zolin*, 491 U.S. 554, 572 (1989) ("In fashioning

a standard for determining when in camera review is appropriate, we begin with the observation that in camera inspection . . . is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure.") (citation omitted).

### III.    Limited Waiver in Child Custody Actions

¶25        Arizona courts have not directly decided whether or how a parent might waive the privilege in a child custody action. *But see* Amy J. Amundsen, *Balancing the Court's Parens Patriae Obligations and the Psychologist-Patient Privilege in Custody Disputes*, 28 J. Am. Acad. Matrim. Law. 1, 5 (2015) (stating that Arizona law recognizes "no psychologist-client privilege once a parent seeks custody in a divorce proceeding") (citing *In re Marriage of Gove*, 117 Ariz. 324, 328 (App. 1977)). We turn there now.

¶26        Parents do not forfeit their psychologist-patient privilege by requesting parenting time in a divorce or custody action. *See Styers v. Superior Court*, 161 Ariz. 477, 478 (App. 1989) (finding privileged records "irrelevant to any issue appropriate to the dissolution"). "The psychiatrist-patient privilege would be seriously compromised if a treating psychiatrist could be required to testify against his patient in any divorce proceeding where the issue of child custody was raised. If such were the law, no psychiatrist could ever assure his patient of confidentiality." *Roper v. Roper*, 336 So.2d 654, 656 (Fla. App. 1976).

¶27        Even so, we cannot deny the tension between Arizona child custody laws, which hinge on a child's best interest, and a parent's privacy interest under the psychologist-patient privilege. *See* Courtney Waits, *The Use of Mental Health Records in Child Custody Proceedings*, 17 J. Am. Acad. Matrim. Law. 159, 160 (2001) ("[N]o privilege is absolute, especially when it relates to determining the fitness of a parent to have custody of a child. The privilege can seriously impact child custody and dissolution of marriage proceedings.").

¶28        And so, we make one thing clear: When a parent's privacy interest squarely conflicts with a child's best interest, the child wins. By legislative design, a parent's recent, undisputed substance abuse disorder has immediate significance for Arizona courts that must decide custody issues "in accordance with the best interests of the child," must account for "all factors that are relevant to the child's physical and emotional well-being," including "[t]he mental and physical health of all individuals involved," and must presume any form of legal decision making is not in the child's best interest. *See* A.R.S. §§ 25-403(A)(5), -403.04(A).

¶29        By the same token, Arizona courts have long assumed the unique "power and duty" to protect the children's best interest in custody disputes. *See Bell*, 44 Ariz. at 528-29; *Kinsella*, 696 A.2d at 578 ("One consequence of the special role of the courts in custody disputes is that evidentiary rules that are accepted as part of the adversarial process are not always controlling in child custody cases."). After all, those children often find themselves in the middle of loving but warring parents, and are often left alone to accept their fate while dodging the emotional shrapnel.

## A.        Implied Waiver

¶30        We hold that Father partially waived the psychologist-patient privilege on the discrete topic of alcohol abuse treatment. *Cf. Clements v. Bernini*, 249 Ariz. 434, 438, ¶ 1 (2020) (recognizing that attorney-client privilege is waived if the record has reasonable evidence to support a good faith belief that an exception to the privilege applies).

¶31        For starters, Father provided no transcripts of either evidentiary hearing, leaving an unknown chasm of evidence. Our rules required that Father order and provide those transcripts to this court. ARCAP 11(c); *State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 16 (App. 2003) ("An appellant is responsible for making certain that the record on appeal contains all transcripts or other documents necessary for us to consider the issues raised on appeal."). Since Father did not supply us with transcripts of his testimony, we cannot tell whether he waived the psychologist-client privilege "in court testimony." *See* A.R.S. § 32-2085(A). Nor can we tell what Father argued at the hearings or during oral argument on that issue. But we presume the transcripts would support the superior court's ruling. *Varco, Inc. v. UNS Electric, Inc.*, 242 Ariz. 166, 169, ¶ 3 (App. 2017).

¶32        Even under this limited record, however, the court did not abuse its discretion. Father thrust his alcohol abuse counseling records to the fore in this child custody dispute—not merely by seeking custody, but by affirmatively seeking unsupervised parenting time and then a reduced alcohol testing requirement—based on four months of sobriety, touting his continued path of treatment and counseling, including his counseling from a psychologist named Nancy Harris. *See Bain*, 148 Ariz. at 334 (privilege is waived "with respect to th[e] particular medical condition" placed at issue); *Gove*, 117 Ariz. at 328 ("In seeking custody of the children, appellant placed her mental condition at issue."). Father did more than parenthetically acknowledge his path to treatment; he wielded that path as affirmative evidence to prove that he presents no danger to the children. Having

brandished that sword, Father cannot turn around and hide behind the privilege, depriving the court of material it reasonably concluded were necessary to protect the children's safety and welfare. *See Danielson v. Superior Court*, 157 Ariz. 41, 43 (App. 1987) ("[A] party cannot, by selective invocation of the privilege, disclose documents or testimony favorable to that party while failing to disclose cognate material unfavorable to that party.") (citation omitted).

¶33 Put differently, Father's pursuit of unsupervised parenting time and a reduced alcohol testing requirement is "inconsistent with observance" of a privilege that prevents the court from considering relevant, admissible evidence about the children's best interests. *See Bain*, 148 Ariz. at 334 (finding implied waiver of psychologist-patient privilege when a party "pursue[d] a course of conduct inconsistent with observance of the privilege"). And it bears repeating that the legislature has empowered Arizona courts to protect the innocent and unrepresented children embroiled in child custody disputes. *See Bailey v. Bailey*, 3 Ariz. App. 138, 141 (1966) (when asked to modify a custody decree, "[t]he primary consideration is the welfare of the child," and "[t]he Court will look to the best interests of the child and not to the gratification of the parents.").

¶34 On this record, it was undisputed that Father was recently diagnosed with moderate to severe alcohol use disorder and that Father had abused alcohol the year before he first moved for unsupervised parenting time. Thus, the court had to presume it would "not [be] in the child's best interests" for Father to have any form of legal decision-making. *See* A.R.S. § 25-403.04(A).

¶35 And when it came to parenting time, Mother has voiced concern from the outset that unsupervised parenting time would jeopardize the children's safety, arguing the counseling records are "necessary to confirm the nature of Father's therapy, his attendance, whether such therapy is effectively treating the overall cause of his addiction[,] [and whether] Father has been transparent with his therapist concerning his history and level of use." Her concern was real. An award of unsupervised parenting time meant that Father would be alone with the children, and thus assume all responsibility to protect their safety and welfare.

¶36 The centerpiece of Father's argument is *Laznovsky v. Laznovsky*, 745 A.2d 1054, 1073 (Md. App. 2000). His reliance is misplaced. There, unlike here, the Maryland legislature expressly preserved the

psychiatrist/psychologist-patient privilege in custody disputes. *Id.* at 1063-64 ("The [Maryland] Legislature clearly established a contrary public policy. It chose to preserve the privilege in custody cases."). The *Laznovsky* opinion even stresses that point: "We emphasize again that we are not faced with a privilege statute that has always been silent as to whether a court could compel the production of otherwise confidential communications in child custody cases." *Id.* at 1063. Here, unlike the Maryland legislature there, the Arizona legislature has not chosen to elevate a parent's privacy interest above a child's best interests in custody proceedings.

## B.     Limited Scope

**¶37**        We pause to stress that courts must narrowly craft their disclosure orders to minimize the intrusion on a patient's privacy interests. Like mining for iron but dreaming of gold, Mother should not mistake the narrow, pointed inquiry described above as her chance to unearth new and persuasive evidence on Father's mental health. We understand that Father's mental health records might capture far more than needed to ensure the children's safety. For that reason, the superior court must first inspect the mental health records in camera, ensuring a limited production of information needed to protect the children's best interest.

**¶38**        An in-camera review presents the least restrictive or intrusive means of protecting the child's best interest and the parent's privacy. *See* Amundsen, *supra* ¶ 25, at 5 ("In Arizona, the court conducts an in camera review to determine what information may lead to admissible evidence.").

**¶39**        And that happened here, mostly. The superior court limited the waiver by subject matter, as in *Bain*, 148 Ariz. at 335, and ordered a gatekeeper in-camera review before any records are released, as in *Blazek*, 177 Ariz. at 542. When fashioning an order to produce mental health records, the court should limit the universe of responsive documents to the shortest period required to accomplish its statutory objectives. *Cf. R.S. v. Thompson in & for Cnty. of Maricopa*, 251 Ariz. 111, 121, ¶ 12 (2021) (balancing competing rights, a court "may then carefully circumscribe the disclosure to the extent permissible" when conducting in-camera review of privileged records) (citation and internal quotation marks omitted). On this point, we hold the order was overbroad because five years of Father's mental health records were unnecessary to protect the safety and welfare of his children.

**¶40**        Summing up, Father partially waived the psychologist-patient privilege when he moved the superior court for unsupervised parenting time and later asked for a reduced alcohol testing requirement,

against a backdrop of red flags and mortal risks. *See Johnson v. Johnson*, 64 Ariz. 368, 370 (1946) ("When custody of children is involved in a court proceeding, it seems to us to be the duty of the trial court to hear all competent evidence which may be offered."). Put simply, Father's interest in privacy must yield to his children's best interest.

*Response to Dissent*

¶41 A few quick points on the dissent. What leaps from the dissent is its singular focus on the evidentiary privilege, the psychologist-patient privilege, boldly called "[t]he relevant statute," compared to its radio-silence on the chapter of Arizona statutes devoted to child custody issues. That is most problematic in this *child custody dispute*. Justice Frankfurter described this fallacy:

> Children have a very special place in life which law should reflect. Legal theories and their phrasing in other cases readily lead to fallacious reasoning if uncritically transferred to determination of a State's duty towards children.

*May v. Anderson*, 345 U.S. 528, 536 (1953) (Frankfurter, J., concurring).

¶42 Beyond that, we agree the superior court may draw an adverse inference if Father chooses not to produce the mental health records. But we do not prematurely reach the issue of sanctions. *See* Ariz. R. Fam. Law P. 65(b)(1)(A) ("*For Not Obeying a Discovery Order or Rule*. If a person fails to obey an order to provide or permit discovery, or fails to comply with a disclosure or discovery rule, the court may enter sanctions including, . . . directing that designated facts be taken as established[.]").

¶43 Lastly, we disagree that "the circumstances of this case would also constitute a waiver of Father's attorney-client privilege if he discussed his recovery from alcohol addiction with his attorney." Again, the superior court granted Father unsupervised parenting time by temporary order on the precondition that he receive therapy from a counselor specializing in addiction. Unless the court ordered Father to retain an attorney for substance abuse counseling, or Father requested unsupervised parenting time based in part on his attorney's counseling services, the attorney-client privilege is not in jeopardy.

**CONCLUSION**

¶44 We understand and appreciate the inherent tension between preserving the confidential psychologist-patient relationship and

safeguarding a child's best interests. But the Arizona legislature has directed the courts to prioritize and protect children's best interests when resolving questions of legal decision-making and parenting time, recognizing that children cannot fend for themselves. Though laudable, Father's pursuit of self-improvement does not defeat the rights of his three minor children to an informed custody decision made in their best interest. For the above reasons, we accept special action jurisdiction and grant partial relief, limiting the release of Father's records to those within the past year from the date of filing for dissolution.

**S W A N N**, Presiding Judge, dissenting:

¶45        I respectfully dissent.

¶46        In an effort to craft an ideal search for the truth in this single case, the majority severely undermines the sanctity of a legislatively created privilege in a manner inconsistent even with the law upon which it relies. If it survives, the holding in this case will be known principally for placing Arizonans on notice that private conversations with mental health providers will lose their shield of confidentiality at the very moment when it is most needed. This result is not only poor public policy, but contrary to the statute that creates the privilege.

## I.        THE RELEVANT STATUTE DOES NOT SUPPORT THE MAJORITY'S OPINION.

¶47        The majority acknowledges that the privilege exists, and that it applies to the communications at issue in this case, but determines that it has been waived. A.R.S. § 32-2085 provides:

> The confidential relations and communication between a client or patient and a psychologist licensed pursuant to this chapter, including temporary licensees, *are placed on the same basis as those provided by law between an attorney and client.* Unless the client or patient waives the psychologist-client privilege in writing or in court testimony, a psychologist shall not voluntarily or involuntarily divulge information that is received by reason of the confidential nature of the psychologist's practice.[2]

(Emphasis added.)

¶48        It is rare that the legislature includes analogies in statutes, and the express parity between the attorney-client privilege and the psychologist-patient privilege is both unambiguous and powerful. Logically, then, the circumstances of this case would also constitute a waiver of Father's attorney-client privilege if he discussed his recovery

---

[2]        The statute also provides that "[t]he psychologist-client privilege does not extend to cases in which the psychologist has a duty to report information as required by law." No such mandatory report is at issue here.

from alcohol addiction with his attorney. Such a broad waiver is surely not what the majority intends, but it is what its decision portends.[3]

**¶49** Our supreme court has underscored the importance of adherence to the statutory language in this precise context. In *Bain v. Superior Court (Mills)*, 148 Ariz. 331 (1986), the court wrote:

> The Arizona statutes relating to the psychologist-patient privilege and the attorney-client privilege are unique by containing express provisions specifying the conduct which will be deemed a waiver of the privilege. In the case of the psychologist-patient privilege, the conduct constituting a waiver must be "in writing or in court testimony." A.R.S. § 32-2085.

*Id.* at 333. Recognizing that the privilege cannot be used both as a sword and a shield, the court went on to hold that waiver could be evidenced by "plac[ing] a particular . . . condition at issue by means of a claim or affirmative defense." *Id.* at 334.

**¶50** At a purely textual level, the majority fails to identify any facts that would constitute waiver under the plain language of the statute. It cites no facts to suggest that Father waived the privilege "in writing," nor can it point to "court testimony" in which Father waived the privilege. But the majority holds that "Father thrust his alcohol abuse counseling records to the fore" by seeking custody, unsupervised parenting time, and a reduced alcohol testing requirement. *Supra* ¶ 33. The logical consequence

---

[3] The majority attempts to sidestep any concern about the attorney-client privilege by pointing out that the court conditioned Father's parenting time on continued therapy. This attempt fails as a matter of logic and law. First, the majority invades the privilege based on a purported waiver, not the existence of a court order. There is nothing in the majority opinion to suggest that the privilege would not have been waived if the court had not imposed a condition on parenting time. Second, disclosure and confirmation of the *fact* of Father's counseling is not at issue—only the *contents* of his communications are subject to the privilege. Third, the majority does not address the language in § 32-2085 that ties the psychologist-patient privilege to the attorney-client privilege. The statute must be read as a whole – it is not a textual salad bar from which courts are free to pick the morsels they wish to apply. Here, the legislature has made clear that the two are to be treated "on the same basis." If Father discussed his alcohol addiction or mental health with his attorney, there is no logical barrier to the invasion of that privilege under the majority opinion.

of the majority's reasoning is that any parent who seeks unsupervised time with his or her child "thrusts" his or her mental health conditions "to the fore" and therefore waives privilege.

## II. THE CASELAW DOES NOT SUPPORT THE MAJORITY'S OPINION.

¶51 The majority cites many cases, but none that support waiver in these circumstances. Indeed, it cites no case in which waiver of the psychologist-patient privilege was upheld at all.

¶52 It is hardly novel or controversial to state that in family court proceedings, the best interests of children are paramount in substantive decision-making. To this end, the majority cites *Hays v. Gama*, 205 Ariz. 99, 102, ¶ 18 (2003) and *Kelly v. Kelly*, 252 Ariz. 371, 375, ¶ 18 (App. 2021). *Supra* ¶¶ 14, 16. Though these cases recognize the importance of children's interests, they say nothing about privilege, much less waiver.

¶53 The majority cites *Clements v. Bernini*, 249 Ariz. 434, 438, ¶ 1 (2020), for the proposition that "attorney-client privilege is waived if the record has reasonable evidence to support a good faith belief that an exception to the privilege applies." *Supra* ¶ 30. This paraphrased language would imply a broad opportunity for implied waiver and would lend significant support to the majority's analysis—if only it accurately reflected the case. The actual quote from *Clements* reads as follows:

> Once the privilege has been established, a party attempting to set it aside **under the crime-fraud exception** must demonstrate "'a factual basis adequate to support a good faith belief by a reasonable person' that in camera review of the materials **may reveal evidence to establish the claim that the crime-fraud exception applies**."

249 Ariz. at 438, ¶ 1 (emphases added) (citation omitted).

¶54 *Clements* did not, as the majority suggests, prescribe a broad opportunity for *in camera* review whenever there is a "good faith belief" that there may be evidence of "an exception" to the privilege. Instead, *Clements* dealt solely with the crime-fraud exception, under which only intentional, reprehensible misuse of the privilege to pursue criminal or fraudulent ends can result in waiver as a sanction. There is simply no parity between the crime-fraud exception to the attorney-client privilege and implied waiver of the privilege covering mental health communications. *Clements* furnishes no reasoned basis for the result the majority reaches here.

¶55        The majority also relies heavily on *Bain*, 148 Ariz. 331. *Supra* ¶¶ 22, 33, 34, 40. That reliance is misplaced, not because *Bain* is unlike this case, but because it reaches a conclusion opposite to that of the majority opinion. In *Bain*, the court *refused* to acknowledge an implied waiver. The contention there was that plaintiff in a medical malpractice case had placed her psychological records at issue by claiming a "conversion reaction" and by suing for loss of consortium. 148 Ariz. at 335. The court both announced (for the first time) and narrowly construed the concept of implied waiver of the psychologist-patient privilege, holding that (1) a claim relating to a single condition did not effect a broad waiver of the privilege with respect to all mental health records and (2) a husband's claim for loss of consortium did not effect a waiver of the wife's privilege. *Id.* at 335–36. Nothing in *Bain* supports the result here.

¶56        The majority cites *Stewart v. Superior Court (State)*, 163 Ariz. 227, 230 (App. 1989), for the proposition that the court has the duty and responsibility to act in a child's best interests. *Supra* ¶ 18. *Stewart*, however, said nothing about the waiver of privilege. The citation to *Stewart* appears to have been included to bolster the majority's refrain that the best interests of children are predominate in family cases.

¶57        I have no quarrel with the proposition that the best interests of children are paramount in family cases, but the principle does not transform the courts into omnipotent agents of the law, free to override statutes and caselaw at will so long as they can justify their actions by reference to a child's interests. A.R.S. § 32-2085 is law—of equal dignity with the broad pronouncements of public policy—and *Stewart* does nothing to support its evisceration in this case.

¶58        The majority pitches a false conflict between the exercise of privilege and the best interests of children. Assertion of a privilege is not a right to win a case to the detriment of a child—it is a right to keep certain information confidential, and the exercise of that right may place the litigant's position in the case at grave risk.[4] The lawful way to protect the interests of a child in a case such as this is not to invade the privilege, but

---

[4]        To some individuals, personal privacy may be more important than full advantage in a custody dispute. And because information revealed in discovery may well be shared with the children, a parent may understandably prefer the risk of an adverse inference in court to the risk of the long-term adverse consequences of the revelation of difficult personal facts to his or her children. Until today, the law recognized the parent's right to balance those risks. But the majority has now transferred control over personal privacy to an adverse party.

to enter orders that promote the child's interests based on the information available. When a litigant invokes a privilege that deprives the court of evidence relevant to the best interests of a child, an adverse inference may arise. *See Melissa W. v. Dep't of Child Safety*, 238 Ariz. 115, 117, ¶¶ 5–8 (App. 2015) (holding that court may draw negative inference based on parent's failure to testify). Contrary to the majority's suggestion, this principle is not a "sanction"—it is the lawful consequence of a lawful election to assert a statutory privilege.

**¶59** The majority next invokes *Danielson v. Superior Court (Lopez)*, 157 Ariz. 41, 43 (App. 1987). *Supra* ¶ 33. But that case, like *Bain*, reaches a conclusion opposite to that of the majority. In *Danielson*, the court rejected a claim of implied waiver. There, the records at issue were alcohol treatment records that the defendant doctor had released to the Board of Medical Examiners. *Danielson*, 157 Ariz. at 42. In a separate malpractice claim against the doctor, the court concluded that even *voluntary* release of records was insufficient to effect an implied waiver. *Id.* at 47–48. *Danielson* does not support the result here—it illustrates the proper skepticism Arizona courts have displayed with respect to such claims.

**¶60** *In re Marriage of Gove*, 117 Ariz. 324 (App. 1977), contains language that best fits the majority's position. The court there noted that "[i]n seeking custody of the children appellant placed her mental condition at issue." *Id.* at 328. But like all the other cases the majority cites, *Gove* did not find an implied waiver of privilege. Instead, *Gove* held that the superior court could rightly have ordered an independent mental examination. *Id.* I have no quarrel with the actual holding of *Gove*, but it does not address, much less support, the implied waiver theory at issue in this case.[5]

**¶61** The majority cites *Styers v. Superior Court (Styers)*, 161 Ariz. 477, 478 (App. 1989), as support for its reassuring (if hollow) statement that its opinion does not effect a wholesale waiver of mental health privileges in family cases. *Supra* ¶ 26. *Styers* correctly noted that "[o]ne may acknowledge the fact of treatment without consenting to the disclosure of its confidential details." *Id.* at 479. But even if the majority were to embrace *Styers* in its entirety, it would do nothing to blunt the destruction of the privilege, because that case—unlike the majority of family cases—did not involve children. A fair reading of the majority's holding in this case would be that the privilege is waived whenever legal decision-making or

---

[5] The Amundsen article upon which the majority relies misinterprets *Gove* and is not authoritative.

parenting time is at issue, but not when the case merely concerns property. Under this view, the exception to the privilege swallows the rule.

**¶62**       Here, we are concerned with alcohol abuse.  But this opinion will control a broad spectrum of future cases.  Take, for example, a victim of sexual abuse who has sought mental health treatment.  Should that victim then find herself party to a divorce case, she will now be forced to reveal her privileged communications to her soon-to-be-ex-husband merely because she asserts her fundamental constitutional right to parent.  To the extent we have any power to weigh relative harm, we should not countenance such a result.  There is no law to support the majority's opinion, and it therefore should not stand.

III.       THE REASONS THE MAJORITY OFFERS FOR ITS CONCLUSION ARE FLAWED.

**¶63**       Apart from the authority it cites, the majority offers four reasons for its decision, which I address in turn.

**¶64**       First, the majority notes that Father has not submitted transcripts from the hearing in the superior court.  *Supra* ¶¶ 31–32.  It then reasons that because we do not know what evidence was adduced before the superior court, Father should lose.  *Id.*  I disagree for two reasons.  First, we have before us a purely legal question.  There is nothing in the majority opinion to suggest that anything said in superior court constituted a waiver—rather, it is the bare fact that Father had the temerity to ask to see his children that gives rise to waiver under the majority's view.  *See Blazek v. Superior Court (Segrave)*, 177 Ariz. 535, 536 (App. 1994) (holding that the existence of a privilege is a question of law).  A transcript is not necessary to decide this issue.  Second, even if the transcript might shed light on the issues in this case, it is the burden of the party seeking to invade the privilege to produce evidence of waiver.  The absence of a transcript should not work to Father's disadvantage in this case.

**¶65**       Second, the majority relies heavily on Father's requests for parenting time as evidence that he placed his mental health at issue.  *Supra* ¶ 41.  To be clear: I agree that Father's mental health is at issue, as in every case involving parenting time.  But this does not translate to a waiver, any more than a criminal defendant waives constitutional rights by pleading not guilty and placing his conduct and mental state at issue.  To be sure, Father's insistence on the privilege may weigh against his position on the merits in this case.  But the privilege does not disappear merely because he is party to a dissolution action.  As stated in *Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 506 (1993), "an uncertain privilege is tantamount to no

privilege at all. Unless the privilege is known to exist at the time the communication is made, it will not promote candor." The majority's opinion achieves what the *Samaritan* court decried—it ensures that no parent will feel secure when his or her communications to a therapist are made.

¶**66** In *Jaffee v. Redmond*, 518 U.S. 1, 11 (1996), the Supreme Court recognized that the psychotherapist privilege serves important public interests. This principle is not the reason for my dissent, nor should it play into the result in this case. We are bound by law in reaching our decisions. We do not sit as arbiters of public policy, weighing policies' relative importance and crafting results to serve our preferred outcome. But even if we were to weigh the policy implications of competing results, the balance would not favor the majority. *Jaffee* offers a powerful rejoinder to the policy-based reasoning of the majority opinion:

> We reject the balancing component of the privilege implemented by that court and a small number of States. Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.

*Id.* at 17 (footnote omitted).

¶**67** Third, the majority reasons that Father's request for parenting time is "inconsistent with observance" of the privilege. *Supra* ¶ 34. As I have noted, Father's assertion of the privilege may well cause harm to his case on the merits. But it is difficult to imagine a clearer signal than the majority's own language that the psychotherapist privilege has been effectively vitiated.

¶**68** Fourth and finally, the majority points out that a lesser standard is necessary to prompt limited *in camera* review than wholesale disclosure. *Supra* ¶¶ 38–40. While true in some contexts, an *in camera* review is unwarranted here. The product of such a review could be a filtering of irrelevant information, but nothing in the records themselves would shed light on the question of whether Father has waived the privilege.

**¶69**        And while the majority takes comfort in the court's ability to carefully craft protective orders and limit disclosure, I do not.[6] This is a rare case, because both parties are represented by capable counsel.  The vast majority of family court litigants in Arizona have no lawyer at all, and *pro per* litigants are unlikely to reap the benefit of a carefully written protective order that limits the scope of disclosure.  The effect of the majority's opinion will be to require courts to order that mental health records be released, and the prospects for wholesale disclosure in such cases are too great to permit the prospect of a protective order to serve as a reason for invading the privilege.  Whatever its intent, the effect of the majority opinion is to cast aside the privilege in every family case involving children.

## CONCLUSION

**¶70**        For the foregoing reasons, I cannot join in the majority opinion.  Applying the statutory and caselaw as written, there are no circumstances in this case that constitute express or implied waiver of the privilege.  The holding in this case functionally casts aside the privilege for communications that have already occurred, and communications yet to occur, for every parent who finds himself or herself in the unwanted position of having to litigate for the right to parent their children.



AMY M. WOOD • Clerk of the Court
FILED:        JT

---

[6]        Indeed, the majority takes it upon itself to reduce the timeframe of disclosure from five years to one year, but never explains its reasoning.  If the privilege is waived, it is waived.  The court's exercise of discretion is as puzzling as its "remand" — a remedy available on appeal, not special action.